IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOE MANUEL CARDONA, | § | |
| TDCJ-CID NO. 1175490, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-06-1718 |
| NATHANIEL QUARTERMAN, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM OPINION AND ORDER**

Petitioner, Joe Cardona, a person in state custody, brings this action seeking a Writ of Habeas Corpus (Docket Entry No. 1). Pending before the court is Respondent Quarterman's Motion for Summary Judgment with Brief in Support (Docket Entry No. 12). For the reasons stated below, Quarterman's motion will be granted, and Cardona's Petition for a Writ of Habeas Corpus will be denied.

**I.  Background**

Petitioner was charged in two separate indictments with the aggravated robberies of Haresh Jesrani and James Forse.[1] Evidence presented at trial revealed that on October 2, 2000, petitioner,

---

[1]Ex parte Cardona, Appl. No. 63,429-01, p. 91; Ex parte Cardona, Appl. No. 63,429-01; and Ex parte Cardona, Appl. No. 63,429-02, p. 91.

along with David Leal, Renee Gonzalez, and Richard Coronado, entered a hardware store owned by Jesrani, armed with guns.[2] Police arrived at the store while the men were still inside.[3] When the gunmen became aware of the police presence, Leal, Gonzalez, and Coronado exited and sped off in a car.[4] A high-speed chase ensued and the three men were eventually apprehended.[5] Meanwhile, petitioner, who had inadvertently been left behind, pointed a gun at a store customer, James Forse, and ordered him to turn over his car keys.[6]

Leal, Gonzalez, and Coronado were each indicted for aggravated robbery, and Gonzalez and Coronado were tried and convicted separately. Leal identified petitioner as the fourth participant in the robbery in exchange for an agreement from the state.[7] In addition, Jesrani positively identified petitioner as the fourth participant in a photo line-up.[8] James Kurth, a customer who was present during the robbery, also testified that the robber who had

---

[2]Reporter's Record, Vol. 3, pp. 16, 29, 233, 245.

[3]Id. at 99-100.

[4]Id. at 104-05.

[5]Id. at 105, 110-13.

[6]Id. at 199-200, 186-87.

[7]Reporter's Record, Vol. 3, pp. 220-21.

[8]Id. at 161.

stolen Forse's vehicle had a teardrop tattoo under his eye, similar to petitioner's tattoo.[9]  The jury found petitioner guilty of two counts of aggravated robbery, and the trial court sentenced him to 35 years of imprisonment for each count, to run concurrently.[10]

On October 13, 2005, petitioner filed two identical state applications for writs of habeas corpus collaterally attacking his convictions, arguing that his attorney provided ineffective assistance at trial and that the state withheld Brady evidence by not disclosing the fact that Leal identified two other suspects who were the earlier focus of the investigation.[11]  These are the same claims petitioner raises in his federal petitions.[12]  The trial court entered findings of fact and conclusions of law and recommended that petitioner's applications be denied.[13]  The Texas Court of Criminal Appeals subsequently denied the applications

[9]Id. at 136, 148.

[10]Ex parte Cardona, Appl. No. 63,429-01, p. 92; Ex parte Cardona, Appl. No. 63,429-01; and Ex parte Cardona, Appl. No. 63,429-02, p. 92.

[11]Ex parte Cardona, Appl. No. 63,429-01, pp. 2-9; Ex parte Cardona, Appl. No. 63,429-01; and Ex parte Cardona, Appl. No. 63,429-02, pp. 2-9.  Petitioner also raised additional issues in his state petitions.

[12]Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1, pp. 3, 7.

[13]Ex parte Cardona, Appl. No. 63,429-01, pp. 80-82; Ex parte Cardona, Appl. No. 63,429-01; and Ex parte Cardona, Appl. No. 63,429-02, pp. 80-82.

-3-

without a written order or a hearing on the findings of the trial court on December 21, 2005.[14]  Petitioner filed an application for a writ of habeas corpus in this court on May 19, 2006.[15]

## II.  <u>Standards of Review</u>

### A.  Habeas Corpus

A court cannot grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Courts review pure questions of law and mixed questions of law and fact under subsection (d)(1) and questions of fact under subsection (d)(2).  <u>Martin v. Cain</u>, 246 F.3d 471, 475 (5th Cir. 2001).  A decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has

---

[14]<u>Ex parte Cardona</u>, Appl. No. 63,429-01, cover; <u>Ex parte Cardona</u>, Appl. No. 63,429-01; and <u>Ex parte Cardona</u>, Appl. No. 63,429-02, cover.

[15]Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1.

on a set of materially indistinguishable facts." <u>Williams v.</u> <u>Taylor</u>, 120 S. Ct. 1495, 1523 (2000).   A decision is an "unreasonable application" of federal law "if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u>  The court "*cannot* reverse the denial of habeas relief simply by concluding that the state court decision applied clearly established federal law *erroneously*." <u>Martin</u>, 246 at 476 (citing <u>Williams</u>, 120 S. Ct. at 1521) (emphasis in original). "Determination of a factual issue made by a State court shall be presumed to be correct," and the prisoner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

**B.    Summary Judgment**

Summary judgment is warranted when evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2552 (1986).  The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  <u>Celotex</u> <u>Corp.</u>, 106 S. Ct. at 2553.  In response to such a showing, the nonmoving party must go beyond the pleadings and proffer evidence

-5-

that establishes each of the challenged elements of the case, demonstrating the existence of genuine issues of material fact that must be resolved at trial.  Id.

While "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases," Clark v. Johnson, 202 F.3d 760, 764 (5th Cir. 2000), the rule applies only to the extent that it does not conflict with the habeas rules. Smith v. Cockrell, 311 F.3d 661, 668 (5th Cir. 2002), overruled on other grounds by Tennard v. Dretke, 124 S. Ct. 2562 (2004). Therefore, 28 U.S.C. § 2254(e)(1), which mandates that findings of fact made by a state court are "presumed to be correct," overrides the ordinary rule that in a summary judgment proceeding all disputed facts must be construed in the light most favorable to the nonmoving party.  Id.  Unless petitioner can rebut the presumption of correctness by clear and convincing evidence as to the state court's findings of fact, they must be accepted as correct."  Id.

### III.  Analysis

**A.  Petitioner's Brady Claim**

Petitioner alleges that the State "didn't give all the facts of the case.  That their witness David Leal had already accused two different people of being the 4th suspect before he accused the appellant of being the 4th suspect."[16]  "A Brady violation occurs

---

[16]Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1, p. 7.

-6-

when the government fails to disclose evidence materially favorable
to the accused." <u>Youngblood v. West Virginia</u>, 126 S. Ct. 2188,
2190 (2006).  This duty extends to impeachment evidence as well as
exculpatory evidence, and "<u>Brady</u> suppression occurs when the
government fails to turn over even evidence that is known only to
police investigators and not to the prosecutors." <u>Id.</u> (internal
quotations omitted).

> Such evidence is material if there is a reasonable
> probability that, had the evidence been disclosed to
> the defense, the result of the proceeding would have
> been different, although a showing of materiality
> does not require demonstration by a preponderance
> that disclosure of the suppressed evidence would
> have resulted ultimately in the defendant's
> acquittal.  The reversal of a conviction is required
> upon a showing that the favorable evidence could
> reasonably be taken to put the whole case in such a
> different light as to undermine confidence in the
> verdict.

<u>Id.</u> (internal quotations omitted).

The State trial court found that petitioner "fail[ed] to
allege sufficient facts which, even if true, would demonstrate that
the State withheld exculpatory evidence in the instant case."[17]  On
appeal the Texas Court of Criminal Appeals adopted this finding
when it denied petitioner relief on his <u>Brady</u> claim.[18]  Respondent
argues that summary judgment is appropriate because petitioner

---

[17]<u>Ex parte Cardona</u>, Appl. No. 63,429-01, p. 81, ¶ 8; <u>Ex
parte Cardona</u>, Appl. No. 63,429-01; and <u>Ex parte Cardona</u>, Appl.
No. 63,429-02, p. 81, ¶ 8.

[18]<u>Ex parte Cardona</u>, Appl. No. 63,429-01, cover; <u>Ex parte
Cardona</u>, Appl. No. 63,429-01; and <u>Ex parte Cardona</u>, Appl.
No. 63,429-02, cover.

"does not argue that this finding is unreasonable.  He reiterates the same arguments he made to the state court. . . . [Petitioner] made no showing that information was withheld.  And even if it was, Cardona did not show that the information was material."[19] Respondent also argues that the evidence was not material because the jury already had occasion to question Leal's credibility when petitioner's attorney pointed out that Leal had identified two other suspects during her cross-examination of an investigator and during her closing argument.[20]  Leal's credibility was also attacked by showing his criminal history and the fact that he had made a deal with the prosecution.[21]

Petitioner responds that the fact that such information was withheld was demonstrated by the fact that his counsel did not cross-examine Leal on the topic, which he argues would have been done had the information been disclosed prior to trial.[22] Petitioner argues that this information was material because while the other attacks on Leal's credibility "might cause a jury to pause a second," pointing out such a discrepancy while Leal was on

---

[19]Respondent Quarterman's Motion for Summary Judgment with Brief in Support, Docket Entry No. 12, p. 6.

[20]Id. at 7; Reporter's Record, Volume 4, pp. 49-50; Reporter's Record, Volume 5, pp. 15-17.

[21]Respondent Quarterman's Motion for Summary Judgment with Brief in Support, Docket Entry No. 12, p. 7; Reporter's Record, Volume 3, pp. 219-22; Reporter's Record, Volume 5, pp. 15-17.

[22]Petitioner Cardona's Response to the Respondent's Summary Judgment, Docket Entry No. 15, p. 2.

the stand would have given the jury "a solid ground to discredit him."[23]

The state court's findings are analyzed under 28 U.S.C. § 2254(d)(1).[24]  To grant relief on petitioner's Brady claim, this court must therefore find that the state court's decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."  Id.  The state court decision was not "contrary to" clearly established Supreme Court precedent because it did not apply a rule contradictory to applicable Supreme Court precedent and it did not reach a result, under "materially indistinguishable" facts, in conflict with such precedent.  Accordingly, the court must focus on § 2254(d)(1)'s "unreasonable application" clause: whether the state court unreasonably applied Supreme Court precedent to the facts.  The record demonstrates that petitioner's counsel twice alerted the jury to the fact that Leal had identified other people as the fourth suspect before identifying petitioner. First, on cross-examination, counsel questioned an investigating officer on these suspects and how these names were acquired.[25]

---

[23]Id. at 3.

[24]Although respondent argues that petitioner has presented no facts that such evidence was withheld, the state court's finding appears to assume that such evidence was withheld and that, nevertheless, there was no Brady violation.  The court therefore analyzes the state court's finding as a mixed question of law and fact, rather than a purely factual determination.

[25]Reporter's Record, Volume 4, pp. 49-50.

During closing arguments counsel again argued Leal's lack of credibility to the jury, stating "You also have Sergeant Saldivar telling you that . . . a possible fourth suspect of Ricardo Espinoza. . . .   And then we hear Joe Cardona is a possible suspect.  Isn't it possible to infer that David Leal is just trying to find somebody to put this fourth person on?"[26]

Although cross-examination of Leal himself would perhaps have been an effective trial strategy, the court concludes that lack of such cross-examination could not "reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Youngblood, 126 S. Ct. at 2190.  The state court's finding was therefore not an "unreasonable application" of federal law, as established by the Supreme Court, and summary judgment on petitioner's Brady claim is appropriate.

**B.   Petitioner's Ineffective Assistance Claim**

Petitioner alleges that his trial attorney provided him with ineffective assistance of counsel.[27]  The state trial court made the following findings:

> 1.   The applicant fail[ed] to allege sufficient facts which, if true, would show that trial counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable

---

[26]Reporter's Record, Volume 5, p. 15.  Counsel continues to discredit Leal's testimony later in the closing arguments.  See id. at 16-19.

[27]Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1, p. 7.

probability that the proceeding would have been
different.

2.   The applicant fail[ed] to show that his trial
counsel's pre-trial motions fell below an objective
standard of reasonableness or that the outcome of
the case would have been different but for these
alleged deficient motions. . . .

. . .

4.   Applicant fail[ed] to show that his trial
counsel's closing argument was deficient or that had
counsel made different arguments, the results of the
proceedings would have been different.

5. The totality of the representation afforded the
applicant was sufficient to protect his right to
reasonably effective assistance of counsel in the
primary case.[28]

The Texas Court of Criminal Appeals adopted these findings when it
denied petitioner's claims.[29]

Under the standard established by <u>Strickland v. Washington</u>,
104 S. Ct. 2052, 2064 (1984), a defendant asserting ineffective
assistance of counsel must first show that "counsel made errors so
serious that counsel was not functioning as the 'counsel'
guaranteed by the Sixth Amendment."  The defendant must also show
that "there was a reasonable probability that, but for counsel's
unprofessional errors, the result would have been different."  <u>Id.</u>
at 2068.  To be entitled to habeas corpus relief on this issue,
petitioner must meet both prongs of the test.  "Judicial scrutiny

---

[28]<u>Ex parte Cardona</u>, Appl. No. 63,428-01, pp. 80-82; <u>Ex parte
Cardona</u>, Appl. No. 63,428-01, pp. 80-82.

[29]<u>Ex parte Cardona</u>, Appl. No. 63,428-01, at cover; <u>Ex parte
Cardona</u>, Appl. No. 63,428-01, at cover.

of counsel's performance must be highly deferential. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 2065 (internal quotations omitted). A "mere possibility" that a different result might have occurred is not enough to demonstrate prejudice. Lamb v. Johnson, 179 F.3d 352, 359 (5th Cir. 1999). Finally, because the state court found that petitioner did not meet the Strickland standard, the court must conclude that the state court's finding was "contrary to" or "an unreasonable application of" federal law. 28 U.S.C. § 2254(d)(1). See Lamb, 179 F.3d at 356 ("The ultimate determination of whether counsel was constitutionally effective is a mixed question of law and fact.").

Respondent argues that summary judgment of this claim is appropriate because petitioner only reiterates the arguments he made in state court and does not argue that the state court's findings were unreasonable under the Strickland test.[30] Petitioner identifies eight instances of ineffective assistance of counsel, which the court will discuss in turn.

1.   Failure to Interview Witnesses Torres and Murrillo

Petitioner argues that counsel failed to interview two witnesses, Rebecca Torres and Manuel Murrillo, whereby counsel

---

[30]Respondent Quarterman's Motion for Summary Judgment with Brief in Support, Docket Entry No. 12, p. 8.

would have discovered that Murrillo had told Torres that the fourth suspect was wearing "tinted glasses." Petitioner argues that having this information before trial would have enabled counsel to more effectively discredit Jesrani and Kurth's identifications of petitioner because neither Jesrani nor Kurth remembered the fourth suspect having tinted glasses.[31]   Respondent points out that petitioner's counsel did alert the jury to the fact that some witnesses, including Torres, described the fourth suspect as wearing tinted glasses during the cross-examination of an investigating officer.[32]   The jury therefore had occasion to consider the fact that some witnesses remembered the fourth suspect wearing tinted glasses and still convicted him, and petitioner fails to identify what, if any, other tactic his attorney could have taken to make such evidence more probative.   The court concludes that the state court finding that petitioner did not meet his burden under the <u>Strickland</u> test was a reasonable application of federal law.   <u>Cf.</u> <u>Lamb</u>, 179 F.3d at 359 ("[W]hen a defendant alleges that his counsel's failure to investigate prevented his counsel from making an informed tactical choice, he must show that knowledge of the uninvestigated evidence would have altered his counsel's decision, and that the bases underlying his counsel's

---

[31]Supplement to Petition for a Writ of Habeas Corpus, Docket Entry No. 2, pp. 3-4.

[32]Respondent Quarterman's Motion for Summary Judgment with Brief in Support, Docket Entry No. 12, p. 10; Reporter's Record, Vol. 4, pp. 63-64.

tactical choice to pursue or forego a particular course would have been invalidated.").

    2.   <u>Failure to Interview Witness Lt. Britt</u>

    Petitioner argues that counsel failed to investigate the facts of the case and to interview Lt. James Britt, whereby counsel would have discovered that Leal had identified two other people as the fourth suspect before identifying petitioner, and this information could have been used on cross-examination of Leal to discredit his testimony.[33]  As discussed earlier with regard to petitioner's <u>Brady</u> claim, the fact that Leal identified two other suspects was noted for the jury twice during the trial.  It was therefore reasonable for the state court to conclude that petitioner did not meet his burden under <u>Strickland</u> for this alleged deficiency.

    3.   <u>Failure to Request an Investigation Into the Possibility that Witnesses were Discussing Testimony</u>

    Petitioner argues that counsel failed to request an investigation of inappropriate behavior by the state's witnesses. Petitioner alleges, "The counsel asked [witness Gabriel Gonzalez[34]]

_____

    [33]Supplement to Petition for a Writ of Habeas Corpus, Docket Entry No. 2, pp. 4-5.

    [34]In his supplement to his petition for a writ of habeas corpus, petitioner identifies this witness as Manuel Murrillo. However, in later filings petitioner refers to this witness as Gabriel Gonzalez, who was an employee in the hardware store on the day of the robbery.  The reporter's record also lists this witness's name as Gabriel Gonzalez.

-14-

if he and the other witnesses in the witness room were talking about a tear drop [tattoo] and he refused to repley [sic].  This investigation would have shown the hear say [sic] among the witnesses in the witness room. . . . [This] kept the claims of [Jesrani] and [Kurth] of recalling a tear drop [tattoo] going unchallenged as fact, or hear say [sic] from the witness room."[35] During petitioner's trial Gonzalez testified that the fourth suspect in the robbery had a "mark" on his face.[36]  Petitioner's attorney then pointed out that when Gonzalez testified in Coronado's trial, nine months earlier, he did not describe any of the robbers as having such a tattoo.[37]  Counsel then suggested that Gonzalez learned about the tattoo from the other witnesses in the witness room.[38]  Gonzalez responded that the topic had not been discussed in the witness room, rather than refusing to answer as petitioner alleges.[39]

Petitioner argues that his counsel should have requested a full investigation on this issue.  However, counsel's questions appear to have been based on trial strategy rather than on real

---

[35]Supplement to Petition for a Writ of Habeas Corpus, Docket Entry No. 2, pp. 5-7.

[36]Reporter's Record, Volume 3, p. 210.

[37]Id.

[38]Id.

[39]Id.

evidence of witness misconduct.  In criminal defense, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffective assistance case, a particular decision not to investigate must be directly addressed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  Strickland, 104 S. Ct. at 2066.  Here, the jury was alerted to the possibility that Gonzalez had learned about the tattoo from other witnesses and petitioner does not establish that an investigation was likely to reveal evidence that was much more probative than the suggestion already made by counsel.  The court concludes that the state court's finding that petitioner has not made the required showing under Strickland is a reasonable application of federal law.

    4.   <u>Lack of Preparation</u>

Petitioner argues that counsel failed to prepare for trial and have a firm command of the facts of the case.  Petitioner claims that had counsel had a firm command of the facts, counsel would have alerted the jury to the fact that (a) the police report contained no record of Haresh and Jesrani recalling a teardrop tattoo on the fourth suspect, (b) some witnesses did not recall a teardrop tattoo, (c) Jesrani did not mention the teardrop tattoo when he was a witness in Coronado's trial, (d) Jesrani's glasses were broken to the point that he could not see to dial 911, and

(e) Jesrani did not recall the suspect having "tinted glasses" as Murrillo did.[40]   However, the record demonstrates that petitioner's counsel did bring up several of these facts at different times during the trial.[41]   The record demonstrates that petitioner was represented by an attorney who investigated the underlying facts sufficiently to present the defensive strategy that petitioner continues to assert and who cross-examined and attempted to use contradictions in prior testimony to impeach the State's witnesses, and petitioner has not shown objectively poor representation or prejudice.   The court therefore concludes that the state court's decision was not an unreasonable application of the <u>Strickland</u> test.

Petitioner further claims that counsel's lack of preparation caused the jury not to consider (a) the fact that Kurth did not mention a teardrop tattoo on the fourth suspect in the police report and did not mention the tattoo when he was a witness in Coronado's trial, (b) that in Coronado's trial Kurth, Jesrani, and Forse gave slightly different accounts of the robbery, and (c) that

_____

[40]Supplement to Petition for a Writ of Habeas Corpus, Docket Entry No. 2, pp. 7-10.

[41]Counsel asked Jesrani if he told the police about the teardrop tattoo and Jesrani responded that he had.  Counsel then asked if Jesrani ever wrote anything down for the police and Jesrani answered "No."  Reporter's Record, Volume 3, p. 79. Counsel also inquired as to Jesrani's broken glasses several times.  Reporter's Record, Volume 3, pp. 57, 61.  Further, counsel elicited that Jesrani did not remember whether the fourth suspect was wearing glasses or not.  Reporter's Record, Volume 3, pp. 88-89.

Kurth did not recall the fourth suspect wearing tinted glasses, and Murrillo did.[42]  Again, many of these details were brought up in the course of the trial.[43]   For the reasons stated above, the court concludes that petitioner's counsel did not fall below an objective level of reasonableness and, furthermore, petitioner has not shown that he was prejudiced by any of his counsel's actions.

Petitioner argues that his counsel "made a comment to Kirth Jesrani [Haresh Jesrani's brother] about being 55% positive of his identification that he claimed but then realized that she (counsel) made a mistake, then appalojized [sic] to the court, stating she was going by the defendant's notes, showing she wasn't prepared for the trial and was without a firm command of the facts of the case." Petitioner argues that counsel's lack of preparedness left her unable to point out that this witness had the opportunity to view the fourth suspect's face for a good bit of time on the day of the robbery, but still failed to identify petitioner as the fourth suspect.[44]

The record demonstrates that counsel was questioning Kirth Jesrani about telling police officers, while looking at photo

_____

[42]Supplement to Petition for a Writ of Habeas Corpus, Docket Entry No. 2, pp. 10-13.

[43]Counsel asked Kurth if he told the police about a teardrop tattoo and he answered "I did."  Reporter's Record, Volume 3, p. 139.  Also, counsel noted the variations in the witnesses' stories during her closing arguments.  Reporter's Record, Volume 5, p. 14.

[44]Supplement to Petition for a Writ of Habeas Corpus, Docket Entry No. 2, pp. 14-15.

spreads, that he was 55 percent sure that Leal was one of the suspects.  The prosecution objected to facts not in evidence, as it was Haresh Jesrani, not Kirth Jesrani, who told police that he was 55 percent sure that Leal was one of the suspects.  Petitioner's counsel said, "I checked my notes.  He had them—I was wrong.  Let me strike the question.  Okay.  My notes indicate it was your brother. . . ."[45]  Also, the record establishes that while Kirth Jesrani did not identify petitioner from the photo array, he did identify him as the fourth suspect at trial.[46]  It is therefore unclear to the court of what misconduct petitioner complains.  The mistake regarding counsel's notes was discovered immediately and, more importantly, was not prejudicial to petitioner.  Further, counsel's elaboration on the fact that Kirth Jesrani got a good look at the fourth suspect would likely have hurt petitioner's case, since the witness was prepared to identify petitioner as the fourth suspect at trial.  Thus, the court is not persuaded that the state court's finding was unreasonable.

    5.    <u>Failure to File a Motion to Quash a Suggestive Photo Array</u>

    Petitioner argues that counsel failed to file a motion to quash the photo array that was unduly suggestive because petitioner was the only individual with "a dark complexion" and facial hair.[47]

---

[45]Reporter's Record, Volume 4, pp. 100-01.

[46]<u>Id.</u> at 98.

[47]Supplement to Petition for a Writ of Habeas Corpus, Docket Entry No. 2, pp. 16-17.

The state trial court found that counsel's pretrial motions did not fall below the standard for reasonableness or that the result of the trial would have been different but for this alleged deficient motion.   The court does not have a copy of the photo array. However, in <u>Simmons v. United States</u>, 88 S. Ct. 967, 971 (1968), the Supreme Court held that

> [t]he danger that the use of [photo arrays] may result in convictions based on misidentification may be substan- tially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error.   We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identifications at trial following a pretrial identifi- cation by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

In this case, eyewitness identifications at trial followed the use of the photo array, and petitioner's counsel engaged in a vigorous cross-examination of the State's witnesses.   The court therefore concludes that the state court's decision was a reasonable application of federal law.

### 6.   Defective Closing Argument

Petitioner argues that counsel's closing argument was defective because it did not point to the facts listed in points 1 through 4.[48]   It is important to note that many of these facts were

---

[48]Supplement to Petition for a Writ of Habeas Corpus, Docket Entry No. 2, pp. 17-22.

discussed in counsel's closing argument.[49]   Counsel's closing
argument emphasized that the credibility of the State's main
witness, Leal, was a primary issue, that the eyewitness's testimony
was very questionable because the witnesses were lying on the
ground for most of the robbery, and that unfavorable factors such
as petitioner's criminal history were irrelevant.   Judicious
selection of arguments for summation is a core exercise of
counsel's discretion, and it cannot be said that the state court
finding of no deficient performance by counsel was unreasonable.
Exculpatory evidence that could have been explored may also have
been exploited by the prosecution, or may have diluted the issues
counsel thought were more important to emphasize, and petitioner
makes no rebuttal of the strong presumption that counsel's focus on
certain issues was based on tactical reasons.   Cf. Yarborough v.
Gentry, 124 S. Ct. 1, 4

> ("[D]eference to counsel's tactical decisions in his
> closing presentation is particularly important because of
> the broad range of legitimate defense strategy at that
> stage.  Closing arguments should 'sharpen and clarify the
> issues for resolution by the trier of fact,' but which
> issues to sharpen and how best to clarify them are
> questions with many reasonable answers.  Indeed, it might
> sometimes make sense to forego closing argument
> altogether.  Judicial review of a defense attorney's

---

[49]See Reporter's Record, Volume 5, p. 10 (noting
inconsisten-cies in Jesrani's description of the teardrop
tattoo), p. 11 (noting Jesrani's broken glasses), pp. 12–13
(noting that Kirth Jesrani did not identify petitioner in the
photo array after the robbery), p. 14 (noting inconsistencies in
witness's accounts of the events of the robbery), pp. 15–19
(discussing the other suspects identified by Leal and attacking
Leal's credibility).

summation is therefore highly deferential—and doubly deferential when it is conducted through the lens of federal habeas.") (internal citations omitted).

### IV.  Conclusion and Order

The court **ORDERS** the following:

1.    Respondent Quarterman's Motion for Summary Judgment (Docket Entry No. 12) is **GRANTED**.

2.    Cardona's Petition for a Writ of Habeas Corpus by a Person in State Custody (Docket Entry No. 1) is **DENIED**.

**SIGNED** at Houston, Texas, on this 6th day of February, 2007.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

-22-